# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 20-255

**TONI SADDLER**

**VERSUS**

**VERMILION PARISH HOSP. SERVICE DIST. #2, ET AL.**

************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, DOCKET NO. 105636
HONORABLE LAURIE A. HULIN, DISTRICT JUDGE

************

**SYLVIA R. COOKS**
**JUDGE**
************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and John D. Saunders, Judges.

**REVERSED AND REMANDED.**

**Gloria A. Angus**
**Angus Law Firm, LLC**
**627 East Vine Street**
**Opelousas, LA 70570**
**(337) 948-8800**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
      **Toni Saddler**

**Michael W. Adley**
**Judice & Adley, APLC**
**P.O. Drawer 51769**
**Lafayette, LA 70505-1769**
**(337) 235-2405**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **Jennifer Pitts**

**William E. Scott, III**
**William A. Fell**
**Watson, Blanche, Wilson & Posner**
**505 North Boulevard**
**Baton Rouge, LA  70821**
**(225) 387-5511**
**COUNSEL FOR DEFENDANT/APPELLEE:**
  **Abbeville General Hospital**

**COOKS, Judge.**

Plaintiff, Toni Saddler, appeals the trial court's grant of summary judgment dismissing her medical malpractice claims against Defendants, Jennifer Pitts and Abbeville General Hospital. Finding the trial court erred in granting the summary judgments, we reverse and remand for trial on the merits.

## FACTS AND PROCEDURAL HISTORY

On October 14, 2015, Plaintiff, Toni Saddler, went to Abbeville General Hospital and was admitted with a diagnosis of congestive heart failure, obesity, extreme adema from her lower legs to her groin, severe peripheral arterial disease, diabetes with diabetic peripheral neuropathy, shortness of breath, chronic pain with osteoarthritis and lower back pain. Plaintiff had extreme difficulty ambulating.

Plaintiff remained in the hospital for several days under the treatment of Dr. Lin Minh Pham. Upon admission, orders were given by Dr. Pham for multiple diagnostic testing, movement as tolerated and for fall precautions. During the first several days of her hospital stay, she was confined to bed and assisted on and off the bedpan, with diapers and linens changed as necessary. On the morning of October 19, 2015, at approximately 10:00 a.m., while attempting to use the bedside commode, Plaintiff suffered a fall to the floor of her hospital room.

According to Plaintiff, at that time, she was being assisted by Jennifer Pitts, a licensed practical nurse. Plaintiff maintained she was directed by Nurse Pitts to get out of bed and use the bedside commode. When Plaintiff could not use the commode, she stood up and warned Nurse Pitts she could not stand alone and would fall walking back to the bed without assistance. Plaintiff stated Nurse Pitts told her she would not fall and did not assist Plaintiff to the bed. Plaintiff asserted she told Nurse Pitts she was falling on two occasions, but was not assisted until she fell directly on the hospital room floor. The nurse's aide, Erika Frederick, was also in the room during the incident, but did not render assistance.

Plaintiff's version of events that morning was disputed. It was stated by Nurse Pitts that Plaintiff was escorted to the commode by her and Erica Frederick. She was then assisted off the commode, and back toward the bed. Ms. Frederick then obtained a walker for Plaintiff. In route to the bed, Plaintiff stated she could not move forward. She let go of the walker, at which point Nurse Pitts moved behind Plaintiff, and controlled Plaintiff's movement by holding Plaintiff against her stomach and chest. She then slowly slid Plaintiff down to the floor.

Approximately 30 minutes before the fall, a physical therapist, Richard Theriot, met with Plaintiff. At that meeting, Plaintiff refused to do her chair to bed exercise and the physical therapist indicated in his report that Plaintiff seemed very lethargic during the meeting and was reluctant to work with physical therapy. The report further indicated she had decreased ability to stand and ambulate due to her physical problems. Later that day, and after the accident, at approximately 11:30 a.m., Mr. Theriot again attempted treatment, but found Plaintiff to be in significant pain on this occasion.

Dr. Pham examined Plaintiff at approximately 12:30 p.m., but, at that time, was unaware of the earlier fall. Dr. Pham became aware of the fall at approximately 1:50 p.m. that afternoon. He eventually wrote an addendum to his note to include the fact that Plaintiff was injured earlier. X-rays were then taken bedside of Plaintiff's right tibia and right foot, which indicated that Plaintiff had a nondisplaced fracture of the right tibia. Nothing in Plaintiff's previous health records indicated any fracture of her tibia. Dr. Pham eventually ordered a posterior leg splint to immobilize the tibia, knee and femur. Despite the incident, Nurse Pitts did not make an entry into Plaintiff's chart until 3:18 p.m. that afternoon. At that time, she entered her version of the incident into Plaintiff's chart.

On the following morning, Plaintff was examined by Dr. Roland Miller, a consulting orthopedic physician, who concluded Plaintiff had a tibial shaft fracture

which extended up to her right knee. He recommended physical therapy, removal of the splint for daily bathing and a repeat x-ray of the right leg in one week. Dr. Miller was under the impression that Plaintiff would be "transferred to Lafayette for control of this." He felt if she was unable to ambulate with use of the walker, she would need to use a wheelchair.

Plaintiff was not transferred to another hospital and was ultimately discharged from Abbeville General two days later on October 22, 2015. Plaintiff maintained little to no care was give to her injuries resulting from the fall, until she was discharged and returned to her home by ambulance and discharged to her hospice. To date, Plaintiff maintains she is unable to walk and is very low functioning. She also asserts the healing of her fractured leg was delayed significantly due to her early discharge from the hospital and she also suffered from serious bed sores which have required extensive treatment.

Based on the fall and alleged injuries suffered, Plaintiff filed a medical malpractice complaint against Abbeville General Hospital, Dr. Pham, Nurse Pitts and Deondrick Bessard, another Licensed Practical Nurse, who was present in the room at the time of the incident. She alleged the defendants failed to provide proper patient treatment, failed to provide emergency services and failed to properly load and unload her. On June 18, 2018, the Medical Review Panel found unanimously that none of the defendants deviated from the respective standards of care in their treatment of Plaintiff.

Despite the opinion of the Medical Review Panel, Plaintiff filed a Petition for Damages on September 17, 2018. The petition was based on the same set of medical facts and against the same parties. On January 4, 2019, Nurse Pitts filed a Motion for Summary Judgment based on Plaintiff's lack of expert testimony to support her claim. Plaintiff filed an Opposition to the motion, attaching some medical records, a portion of Plaintiff's deposition and the affidavit of a friend of Plaintiff's who was

3

not present at the time of the incident. Plaintiff eventually added the affidavit of Temisha Sonnier. That affidavit indicated Ms. Sonnier was a nurse, but did not mention what her qualifications were nor what documents she reviewed to form an opinion. Nurse Pitts filed a reply to the opposition, objecting to Ms. Sonnier's affidavit as insufficient and lacking adequate proof as to Ms. Sonnier's qualifications.

On February 1, 2019, Abbeville General Hospital, Dr. Lin Minh Pham and Deondrick Bessard also filed a Motion for Summary Judgment based on Plaintiff's lack of expert testimony as required by the Louisiana Medical Malpractice Act. After several continuances, a hearing on both summary judgments was set for February 18, 2020.

On February 13, 2020, five days before the hearing, Plaintiff filed a "Supplemental Opposition to Motions for Summary Judgment." To that opposition Plaintiff attached the resume or curriculum vitae of the offered expert, Temisha Sonnier. At the hearing on the motions, the trial court ruled that the "Supplemental Opposition to Motions for Summary Judgment" was not timely filed under La.Code Civ.P. art. 966 and therefore could not be considered. The court did accept the Plaintiff's first supplemental opposition filed in January of 2019 which included Sonnier's affidavit. Plaintiff also asserted that the incident in question involved the sort of "obvious negligence" that did not require an expert witness.

The trial court eventually granted the Motions for Summary Judgment reasoning that this particular case necessitated the testimony of an expert to establish the breach of the standard of care. For that reason, the motion for summary judgment was granted and Plaintiff's case dismissed.

Plaintiff appealed the trial court's judgment, contending it erred in granting summary judgment in favor of Nurse Pitts and Abbeville General.[1] For the following reasons, we reverse the trial court's grant of summary judgment and remand the case back to the district court for trial on the merits.

**ANALYSIS**

Grants of summary judgment are subject to de novo review "using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law." *Supreme Servs. & Specialty Co., Inc. v. Sonny Greer, Inc.*, 06-1827, p. 4 (La. 5/22/07), 958 So.2d 634, 638. We shall consider the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-moving party. *Hines v. Garrett*, 04-806 (La. 6/25/04), 876 So.2d 764. If the mover will not bear the burden of proof at trial on the matter, then he must only present evidence showing a lack of factual support for one or more essential elements to the non-mover's case. La.Code Civ.P. art. 966(C)(2); *Simien v. Med. Protective Co.*, 08-1185 (La.App. 3 Cir. 6/3/09), 11 So.3d 1206, *writ denied*, 09-1488 (La.10/2/09), 18 So.3d 117. Once the mover has made a prima facie case that the motion should be granted, the non-mover must then present evidence sufficient to show a genuine issue of material fact. *Id*. If the non-mover fails to present some evidence that he might be able to meet his burden of proof at trial, the motion should be granted. *Id*.

This motion for summary judgment involves a suit for medical malpractice. To prevail in a medical malpractice claim, a plaintiff must demonstrate by a preponderance of the evidence: (1) the applicable standard of care; (2) a breach of the standard of care; and (3) causation between the breach and the resulting injury.

---

[1] The summary judgments granted in favor of Dr. Pham and Deondrick Bessard were not appealed by Plaintiff.

La.R.S. 9:2794. The defendants contended, and the trial court ultimately agreed, that they were entitled to summary judgment since Plaintiff failed to present necessary expert medical testimony regarding a breach of the standard of care; thus, failing to carry their evidentiary burden as to this essential element of the malpractice claim. For the following reasons, we find the trial court erred in finding expert testimony was required under the specific circumstances of this case and in granting summary judgment on that basis.

Plaintiff maintains on appeal that expert evidence was not required in the present case, as defendants actions in this matter presented an instance in which the medical and factual issues are such that a lay person could perceive negligence in the alleged conduct as well as any expert can. Louisiana courts have consistently held that in medical malpractice suits, "[e]xpert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, *except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony*." *Samaha v. Rau*, 07-1726, pp. 5-6 (La. 2/26/08), 977 So.2d 880, 884 (emphasis added). The supreme court's decision in *Pfiffner v. Correa*, 94-924, 94-963, 94-992, pp. 9-10 (La.10/17/94), 643 So.2d 1228, 1233-34 (emphasis added), discussed when such expert testimony is needed:

> Expert testimony is not required where the physician does an obviously careless act, such as fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient's body, from which a lay person can infer negligence. See *Hastings v. Baton Rouge Gen. Hosp.*, 498 So.2d 713, 719 (La.1986). *Failure to attend a patient when the circumstances demonstrate the serious consequences of this failure*, and failure of an on-call physician to respond to an emergency when he knows or should know that his presence is necessary are also examples of obvious negligence which require no expert testimony to demonstrate the physician's fault. See *id*. at 719-20. Likewise, where the defendant/physician testifies as to the standard of care and his breach thereof, see, e.g., *Riser v. American Medical Int'l Inc.*, 620 So.2d 372, 377 (La.Ct.App. 5th Cir.1993), or the alleged negligence consists of violating a statute and/or the hospital's bylaws, see, e.g.,

*Hastings*, 498 So.2d at 722 (violation of [La.R.S.] 40:2113.4 which imposes duty on a hospital to make emergency services available to all persons in the community without regard to income or insurance protection and hospital bylaws establishing duties for on-call physicians), expert testimony is also unnecessary to establish a malpractice claim. . . . Though in most cases, because of the complex medical and factual issues involved, a plaintiff will likely fail to sustain his burden of proving his claim under [La.R.S.] 9:2794's requirements without medical experts, there are instances in which the medical and factual issues are such that a lay jury can perceive negligence in the charged physician's conduct as well as any expert can, or in which the defendant/physician testifies as to the standard of care and there is objective evidence, including the testimony of the defendant/physician, which demonstrates a breach thereof.

Plaintiff maintained her warnings that she would fall and requests for assistance to Nurse Pitts and others in the room were disregarded, which led to her suffering a fall to the floor of the hospital room. Nurse Pitts maintained she came to Plaintiff's assistance, and helped slide the Plaintiff to the floor, rather than Plaintiff suffering the fall as she claimed. We do know that subsequent to the accident, Plaintiff was diagnosed with a nondisplaced fracture of her tibia, which was not present prior to the incident in question. It is also uncontradicted that Plaintiff was admitted into the hospital suffering from numerous physical maladies, including extreme adema from her lower legs to her groin and had great difficulty ambulating. Her problems were such that the hospital orders had her confined to bed, physically assisted on and off the bedpan, and fall precautions were instituted. The records also indicate the incident in question occurred approximately 30 minutes after Plaintiff was found to be lethargic and unable to complete her chair to bed exercises by her physical therapist.

There also were significant questions of fact as to whether the hospital personnel exhibited a failure to attend to Plaintiff following the fall. It was established in the records that Dr. Pham was not aware of Plaintiff's fall when he examined her at 12:30 p.m. that day and was not informed of the fall until four hours after it occurred, when he then ordered x-rays and it was determined Plaintiff had a

broken tibia. Nurse Pitts did not place any notation in the Plaintiff's record about the fall until 3:18 p.m., over five hours after the fall.

Considering the abundant evidence in the record as to Plaintiff's extreme difficulty in ambulating, we find any alleged behavior of hospital personnel in the room in refusing assistance when requested is an act of negligence so obvious that a lay person can infer negligence without the guidance of expert testimony. A patient who was confined to bed and in such physical condition to have fall precautions instituted, cannot be refused assistance in ambulating to and from her bed.

To hold otherwise, in our view, can only be done by discounting Plaintiff's version of events and accepting the version of events offered by Nurse Pitts. To make such a factual evaluation is not appropriate at the summary judgment stage of proceedings. It is well-settled that a trial court cannot make credibility determinations on a motion for summary judgment. *Sportsman Store of Lake Charles, Inc. v. Sonitrol Security Systems of Calcasieu, Inc.*, 99-201 (La. 10/19/99), 748 So.2d 417. In ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Baldwin v. Board of Supervisors for University of Louisiana System*, 13-602 (La.App. 1 Cir. 2/7/14), 138 So.3d 650. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. *Suire v. Lafayette City-Parish Consolidated Government*, 04-1459 (La. 4/12/05), 907 So.2d 37. A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Smitko v. Gulf South Shrimp, Inc.*, 11-2566 (La. 7/2/12), 94 So.3d 750; *Journet v. Mouton*, 12-811 (La.App. 3 Cir. 2/6/13), 107 So.3d 829; *Anglin v. Anglin*, 05-1233 (La.App. 1 Cir. 6/9/06), 938 So.2d 766, 769.

8

We note the Louisiana Supreme Court in *Pfiffner* found that a physician's delay in responding to an emergency is an example of obvious negligence that would require no expert testimony. Similarly, we find acknowledging the disputed version of events in this matter, if the defendants' acted as alleged by Plaintiffs in refusing to offer assistance to a patient who had been confined to bed and was under fall precautions due to her extreme difficulty in ambulating, such is an example of obvious negligence that would not require expert testimony. Certainly, if Plaintiffs version of events is found to be true, Plaintiff would meet the last hurdle set out by *Pfiffner* to "demonstrate by a preponderance of the evidence a causal nexus between the defendant's fault and the injury alleged." *Pfiffner*, at 1234.

We note Plaintiff also assigned as error the trial court admitting and relying on the medical review panel's opinion, contending the panel exceeded its statutory authority and improperly made a decision based on credibility and not the medical standard of malpractice. We agree it is clear the medical review panel accepted as true Nurse Pitts' version of events in reaching its conclusion, as evidenced by its reasons:

> As to Nurse Pitts, she followed all applicable orders, followed appropriate protocols to prevent the fall, and documented the fall precautions that she followed. When she realized that the patient could no longer stand, she appropriately got behind the patient and attempted to slide the patient slowly to the floor. Nurse Pitts also timely notified Dr. Pham as well as the charge nurse of the fall.

As can be seen from the record, nearly every conclusion made by the medical review panel is disputed by Plaintiff. The version of facts relied upon by the medical review panel is essentially a verbatim recitation of Nurse Pitts' version of events. Moreover, as Dr. Pham was not notified of the fall until nearly four hours after it occurred, the conclusion that Nurse Pitts or any other hospital personnel "timely notified" Dr. Pham of the fall is dubious at best and unsupported by the record. We have held that a hospital is responsible for the negligence of its employees, including

nurses, and that the doctrine of respondeat superior is applicable. *Pommier v. ABC Ins. Co.*, 97-1342 (La.App. 3 Cir. 7/15/98), 715 So.2d 1270, *writs denied*, 98-2455, 98-2456 (La. 11/20/98), 729 So.2d 562. The law is clear to prevail against the hospital in a medical malpractice claim, a plaintiff has to show that hospital personnel negligently departed from the recognized standard of care afforded by hospitals in the area for the particular malady involved. *Jones v. Rapides General Hospital*, 598 So.2d 619 (La.App. 3 Cir. 1992); *Dean v. Ochsner Medical Foundation Hosp. and Clinic*, 99-466 (La.App. 5 Cir. 11/10/99), 749 So.2d 36. The medical review panel was never asked the companion question of, if Plaintiff's version of facts were true, would it constitute malpractice on the part of Nurse Pitts and hospital personnel? The failure to elicit the panel's response to this crucial question is fatal to Defendants' motion for summary judgment.

Based on the information found in the record, we find there are genuine issues of material fact that warrant trial on the merits, and dismissal of this case at the summary judgment stage was inappropriate. As noted, it is not the trial court's function on a motion for summary judgment to determine or even inquire into the merits of disputed factual issues that require credibility determinations. Therefore, we reverse the grant of summary judgment and remand the case for trial on the merits. All costs of this appeal are assessed to defendants-appellants.

**REVERSED AND REMANDED.**

10