759 So.2d 869 (2000)
Frank W. MANNING, Jr.
v.
Jeffrey SKETCHLER, M.D.
No. 99-CA-1128.
Court of Appeal of Louisiana, Fifth Circuit.
March 22, 2000.
*870 R. Ray Orrill, Jr., Leslie A. Cordell, Lyn M. Curlin, New Orleans, Louisiana, Attorneys for Plaintiff/Appellant.
Harvey J. Godofsky, Metairie, Louisiana, Attorney for Defendant/Appellee.
Panel composed of Judges THOMAS F. DALEY, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
THOMAS F. DALEY, Judge.
Plaintiff, Frank W. Manning, Jr., appeals from the partial summary judgment granted in favor of defendant, Dr. Jeffrey Sketchler (Sketchler), on his claim for surgical malpractice. For the reasons which follow, we affirm.
Plaintiff was admitted to East Jefferson General Hospital (EJ) on April 25, 1992, following a serious automobile accident. Plaintiff was operated on the following day by Sketchler, an orthopedic surgeon. Sketchler placed a locked intramedullary femoral rod into the shaft of the plaintiff's left femur (thigh bone). A short leg cast was also placed on the left leg.
Shortly after the surgery, plaintiff was ordered to begin physical therapy at EJ. Plaintiff alleges that he informed the two physical therapy aids that brought him to the therapy room that he needed to use the restroom. They walked plaintiff to the restroom and then left him unattended. While trying to sit down, plaintiff fell and hit the wall and the side of the commode. Plaintiff was unable to get up. He remained on the floor and pulled the chain for assistance. The two attendants returned and assisted plaintiff back to his hospital room.
Following this incident, plaintiff alleges that he began to suffer considerable pain in his leg. Upon complaint, he was assured each time by Sketchler and other hospital personnel that this was expected following surgery.
On May 5, 1992, plaintiff was transferred to a rehabilitation facility of the hospital. However, the pain persisted to the extent that plaintiff was unable to perform the rehabilitation maneuvers. Finally, on May 11, 1992, plaintiff was taken for an x-ray. The x-ray revealed that there was a further fracture of the proximal femoral fragment of the femur.
Plaintiff was readmitted to EJ and Sketchler performed a second surgical procedure on May 14, 1992. The original intramedullary rod was removed and replaced with a smaller one and cerclage wires were used to hold the bone together.
Following this second surgical procedure, plaintiff developed a post-operative wound infection. Treatment of this condition continued at the Skilled Nursing Facility of EJ until July 10, 1992, when plaintiff was finally discharged.
However, following his discharge, plaintiff continued to suffer from chronic infections. The rod was ultimately removed in a third surgery in 1994 at Ochsner Foundation Hospital.
On April 21, 1993, the plaintiff filed a claim for damages against Sketchler and EJ. On December 6, 1994, a medical review panel met and rendered a decision in favor of both defendants.
*871 On January 10, 1995, plaintiff filed suit in district court against both defendants. On January 19, 1999, almost seven years after the procedure at issue and over four years after the institution of this suit, Sketchier filed a Motion for Summary Judgment.[1] Sketchier pointed out in his request for summary judgment that plaintiff had answered interrogatories indicating that he did not have an expert witness to testify in the case to show a breach in the applicable standard of care. Thus, defendant argued that in the absence of an expert witness to testify on plaintiff's behalf, plaintiff had no factual support for one or more of the elements essential to his claim. Further, defendant argued that with his deposition testimony and the opinion of the medical review panel that he had not breached the standard of care, there were no genuine issues of material fact, and that he was entitled to judgment as a matter of law.
In response, plaintiff submitted his own affidavit wherein he stated that "[p]rior to this surgery, however, I heard Dr. Sketchier tell someone that he had not been furnished with the appropriate `rods' but that they would have to do, under the circumstances." Plaintiff also submitted the affidavit of an expert in infectious disease, Dr. William J. Mogabgab, who opined that the infection management by Sketchier was below the standard of care. Plaintiff argued that, with his affidavit, the affidavit of Dr. Mogabgab, the admission by defendant in deposition that insertion of a rod that is too large can place stress on the femur, which might result in a fracture, and the fact that the May 11, 1992 x-ray indicated an additional fracture of plaintiff's femur, plaintiff does not need an expert to defeat defendant's Motion for Summary Judgment.
Following a hearing on the motion, the court rendered a partial summary judgment in favor of Sketchier on "all allegations, causes of action and claims pertaining to the orthopedic surgeries and orthopedic care (other than wound care) performed by Jeffrey Sketchier, MD." The judgment further provided that the summary judgment was denied "insofar as the allegations, causes of action and issues pertain to the wound care management of Mr. Manning by Jeffrey Sketchier, MD." The court noted that the judgment was considered final in accord with La. C.C.P. arts. 1911 and 1915, with no reason for delay. It is from this ruling that plaintiff appeals.
On appeal plaintiff's primary argument is that the court erred in rendering summary judgment against him due to his lack of expert testimony. Plaintiff contends that there are genuine issues of material fact present, which should defeat defendant's Motion for Summary Judgment even in the absence of an expert testifying on his behalf. Based on the facts of this case, we disagree.
A Motion for Summary Judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
Pursuant to La. C.C.P. art. 966, the mover bears the burden of proof to show "that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." Once the mover has made a prima facie showing that the motion should be granted, the burden shifts to the adverse party to present evidence demonstrating that material factual issues remain. Once the Motion for Summary Judgment has been properly supported by the moving party, the failure of the adverse party to produce evidence of a material factual dispute mandates the granting of the motion. Perricone *872 v. East Jefferson General Hosp., 98-343 (La.App. 5th Cir. 10/14/98), 721 So.2d 48; Hayes v. Autin, 96-287 (La.App. 3rd Cir. 12/26/96), 685 So.2d 691, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41.
However, if the mover will not bear the burden of proof at trial, he only need point out to the court that there is an absence of factual support for one or more of the elements essential to the adverse party's claim. Once the mover establishes that there is no factual support for an essential element of the adverse party's claim, the burden shifts to the adverse party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If he fails to do so, the mover is entitled to summary judgment. Perricone, supra; Tonubbee v. River Parishes Guide, 97-440 (La.App. 5th Cir. 10/28/97), 702 So.2d 971.
Plaintiff alleged medical malpractice against Sketchier in both his operative performance and his post-operative care. In a medical malpractice action based on the negligence of a physician, the plaintiff has the burden of proving the applicable standard of care under similar circumstances, breach of that standard of care, and causation between the breach and the injuries. La. R.S. 9:2794 A.[2]
Expert witnesses who are members of the medical profession are usually necessary sources of proof in medical malpractice actions to establish the standard of care under the circumstances and to determine whether the defendant doctor possessed the requisite degree of skill and knowledge or failed to exercise reasonable care and diligence. Seagers v. Pailet, 95-52 (La.App. 5th Cir. 5/10/95), 656 So.2d 700. Cf. Pfiffner v. Correa, 94-0924 (La.10/17/94), 643 So.2d 1228 (recognizing cases where expert opinion would not be required, where the physician does an obviously careless act, such as amputating the wrong arm, dropping a knife, scalpel or acid on a patient, or leaving a sponge in a patient's body, from which a lay person can infer negligence from the facts).
This court recently addressed the issue of whether expert testimony was necessary in a medical malpractice case to defeat a defendant's Motion for Summary Judgment in a case similar to this one. Perricone v. East Jefferson General Hosp., supra.[3] In Perricone, plaintiff argued that the trial court erred in granting the Motion for Summary Judgment in favor of the defendant doctors, arguing that, even in the absence of expert testimony on her behalf, there were material issues of fact as to whether the defendant doctors breached their standard of care. In affirming the summary judgment, we held that in response to defendants' motion, it was necessary for plaintiff to present factual support for her allegations that the physicians had breached the standard of *873 care in their treatment of plaintiff through expert testimony to that effect. Absent such factual support, we concluded that summary judgment was appropriately granted.
Perricone had alleged that the care provided by the defendant doctors was negligent. Thus, at trial she would bear the burden of proving the degree of care required by the doctors, and that the care provided fell below that standard.
As support for her claim and in rebuttal to the Motions for Summary Judgment, Perricone introduced a document entitled Departmental Procedure Manual for Nursing: Standard Safety and Falls Prevention Measures, and argued that there was a question of fact as to whether the appropriate procedure was implemented in her case. While the document she relied on reflected the standard of care to be applied by nurses, plaintiff failed to present any evidence as to what was required of the doctors in assessing and implementing a proper care plan. No other evidence was presented by the plaintiff.
Defendants, through interrogatories, sought to discover what experts would be utilized by the plaintiff. Plaintiff responded that she had not yet determined who would be called as an expert.
The doctors then filed their Motions for Summary Judgment, alleging that the plaintiff had presented no factual support for her allegations that they had breached the applicable standard of care, and therefore, presented no genuine issue of material fact because she failed to identify any expert to be offered at trial. In addition, the doctors presented the findings of the medical review panel, and thus, the opinion of three medical experts, who opined that the doctors did not fail to exercise reasonable diligence and care. At that point, we held that it was incumbent on the plaintiff to produce factual support for her allegations. Perricone failed to do so, and therefore, we affirmed the trial court ruling granting the defense Motions for Summary Judgment.
We find that the reasoning and result in Perricone is applicable here. The medical malpractice act at issue in this appeal of the partial summary judgment is whether Sketchler's surgical performance fell below the applicable standard of care under similar circumstances. Consideration of this issue does not involve negligence that is so obvious that it could be inferred from the facts presented. To the contrary, it involved complicated medical considerations concerning whether the appropriate procedure was utilized given the size and health of the patient as well as decisions about the surgical technique of the chosen procedure. Plaintiff, at trial, will bear the evidentiary burden of showing the applicable standard of care and breach of that standard of care in the operative procedures utilized. Given the complexity of this issue, expert testimony was necessary to make that showing.
With defendant's Motion for Summary Judgment, defendant submitted his deposition.[4] In that deposition, he stated that he utilized the procedure most appropriate for this patient and that he performed the surgery in accordance with appropriate standards. He stated that the rod he inserted *874 in the bone was of appropriate size. He further stated that a further fracture of the bone under the circumstances of plaintiffs injury is a known risk of this surgery of which plaintiff was informed. Thus, as in Perricone, in response to the defense's Motion for Summary Judgment, calling into question plaintiffs factual support for his claim, it was incumbent upon plaintiff to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial that defendant breached the appropriate standard of care. In the absence of producing that factual support for his allegations, summary judgment was appropriately granted.
Plaintiff contends that he established genuine issues of material fact without expert testimony through his affidavit and the deposition testimony of defendant. Plaintiff stated that he heard defendant say that he did not have the appropriate rods. Plaintiff also cites defendant's deposition testimony to the effect that if a rod that is too big is used it could place stress on the bone and cause a further fracture. Thus, plaintiff contends, since he had a further fracture of his bone, he has presented sufficient factual support for the issue to go to a jury. We disagree.
Plaintiff's selective extrapolation of defendant's deposition testimony portrays an incomplete picture. In the remainder of the deposition testimony, defendant goes on to state that he did not think that the rod in this case was too big. To the contrary, if anything, his concern was that it was too small. Sketchier further testified that an increase in the fracture or further fracture is a known and acceptable risk of the type of surgery performed on plaintiff in light of his injury and size. Thus, when defendant's complete deposition testimony is considered rather than simply the selected portions presented by plaintiff, we find, as did the trial court, that plaintiff did not produce sufficient factual support to establish that he would be able to satisfy his evidentiary burden at trial. Therefore, we find no error, under the circumstances of this case, in the trial court ruling granting the Motion for Partial Summary Judgment.
Accordingly, the summary judgment granted in favor of defendant on the issue of his operative procedures is affirmed.
AFFIRMED.
NOTES
[1] The record indicates that EJ also filed a motion for summary judgment. A ruling on the EJ motion, if there has been one, is not in the record before us and it is not a part of this appeal.
[2] La. R.S. 9:2794A provides:

In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., a dentist licensed under R.S. 37:751 et seq., an optometrist licensed under R.S. 37:1041 et seq., or a chiropractic physician licensed under R.S. 37:2801 et seq., the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, optometrists, or chiropractic physicians within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
[3] See also Dean v. Ochsner Medical Foundation, 99-466 (La.App. 5th Cir. 11/10/99), 749 So.2d 36.
[4] Defendant submitted other information along with his motion for summary judgment, including the opinion and reasons of the medical review panel. Plaintiff argues on appeal that these documents were erroneously admitted because they were a mere photocopy, not certified, attached to an affidavit or sworn to in any way. He also argues that the opinion of the medical review panel is not admissible in summary judgment proceedings at all because it is expert opinion not based on personal knowledge contrary to the dictates of La. C.C.P. art. 967. While we are aware that this later point raises an issue the resolution of which has been split in our appellate circuits (for a thorough discussion of this issue see Simmons v. Berry 98-660 (La.App. 1st Cir. 9/3/99), 748 So.2d 473), and the former issue likewise may have merit (Robertson v. Northshore Regional, 97-2068 (La.App. 1st Cir. 9/25/98), 723 So.2d 460), we do not reach either of these issue herein because they are not germane to our resolution of this case in its present posture.