MARION F. EDWARDS, Judge.
 

 | ?The judgment on appeal in this matter is the grant of a Motion for Summary Judgment in favor of defendant/appellee, Mothe Funeral Homes, LLC (“Mothe”), which dismissed plaintiffs/appellants’ action for damages. For reasons that follow, we affirm.
 

 Francisco Hernaez (“Mr. Hernaez”) and his family evacuated to Picayune, Mississippi during Hurricane Katrina and were still living there on October 1, 2005. Sadly, on that day, Mr. Hernaez’ wife of 35 years, Alba Hernaez (“Mrs. Hernaez”), died in a Mississippi hospital. A family member called Mothe in New Orleans and made an appointment for the following day to arrange for Mrs. Hernaez’ funeral. Mr. Hernaez chose Mothe because he had a policy of burial insurance on his wife with a face value of $750 that was purchased in 1972 from Mothe Life Insurance Company (“MLIC”). The meeting among the Her-naez family members and representatives of Mothe did not go well and, ultimately, the | ¡¡family was asked to leave the premises. Funeral services for Mrs. Hernaez were held later at a funeral home in Mississippi.
 

 Subsequently, Mr. Hernaez and his two adult children, Sayra and David Hernaez, filed this action against MLIC and Mothe for damages. The petition alleges bad faith breach of contract, misrepresentation of the coverage of the insurance policy, and negligent and intentional infliction of emotional distress. They asserted that the funeral director at Mothe falsely informed them that the policy contract was null and void because Mrs. Hernaez died out of state, that the funeral home was too busy with previously scheduled funerals to accommodate them, and that the Hernaez family was not welcome on the premises. It is also alleged that the funeral director ordered them to leave. In a supplemental and amending petition, the Hernaez family added the allegation that Mothe negligently had the deceased’s remains embalmed in
 
 *456
 
 Mississippi without authorization of the family.
 

 Both Mothe and MLIC filed motions for summary judgment. The Hernaez family settled with MLIC and dismissed MLIC with prejudice. The motion for summary judgment filed by Mothe was heard and granted by the trial court. That judgment, which also dismissed all claims made by the appellants against Mothe, is the subject of this appeal taken by the Her-naez family.
 

 Our review of summary judgments is
 
 de novo,
 
 using the same criteria applied by trial courts to determine whether summary judgment is appropriate.
 
 [1]
 

 FACTS
 

 Affidavits and depositions presented in regard to the motion to suppress included depositions by Mr. Hernaez, his son, David, and his daughter, Sayra. The 14deposition and affidavit of Noah Stoute (“Mr. Stoute”), the funeral director for Mothe, are also included.
 

 The testimony in the three Hernaez family depositions is consistent and alleges that, shortly after Mrs. Hernaez died in Mississippi on October 1, 2005 at a very late hour, Sayra Hernaez had a telephone conversation with a representative of Mothe who informed her that arrangements would be made to have a local funeral home pick up the deceased the next morning and have her transported there. On the following day, Mothe would pick up the deceased and bring her home. There was no discussion regarding embalming of the deceased. Sayra also made an appointment with Mothe for October 2 at noon to meet with the funeral director to make the funeral arrangements.
 

 Mr. Stoute, the funeral director, met with the family the next day. He offered his condolences and gathered pertinent information about the deceased. Mr. Stoute informed the family that they had incurred charges to McDonald Funeral Home in Mississippi for embalming. Sayra told Mr. Stoute that she had only given permission for transportation, not embalming. Mr. Stoute explained that the embalming was necessary for transportation across state lines. Sayra was upset and the meeting became somewhat tense. There is testimony from family members that they were still considering whether an autopsy should be conducted.
 

 Mr. Hernaez produced the burial policy and stated that he wanted Mothe to provide a funeral for his wife.
 

 The versions of what occurred between the Hernaez family and Mr. Stoute at that meeting differ. According to the account of the meeting given by the Hernaez family, when Mr. Hernaez produced the policy, Mr. Stoute told the family that the policy was “null and void” because Mrs. Hernaez died out of state. There was a heated discussion among the Hernaez family members and Mr. Stoute that ended 15with Mr. Stoute telling the family that Mothe would not provide funeral services. Mr. Stoute then asked the family to leave the premises.
 

 Mr. Stoute’s version of the events is that the three family members came into Mothe and had a general discussion with him about what information would be needed. Mr. Stoute went over some initial charges already incurred, including the transportation and embalming of the deceased in Mississippi. When Sayra objected to the embalming procedure, Mr. Stoute called in Whitney Schroeder, the Mothe employee who had spoken with Sayra the previous night, to verify that Sayra had given permission the night be
 
 *457
 
 fore to proceed with the embalming. Whitney Schroeder told him that her notes showed that Sayra had authorized the procedure.
 

 Mr. Stoute testified that he gave the Hernaez family an approximate cost for the funeral services, including the cost of transportation and embalming, but he could not recall the exact figure and did not get far enough in the conference to record the numbers in the usual way.
 

 Mr. Stoute recalled that Mr. Hernaez indicated he was willing to pay the charges incurred in Mississippi and presented Mr. Stoute with the MLIC policy to pay for the funeral services at Mothe. Mr. Stoute read the policy and told Mr. Hernaez that the maximum amount of the policy was $750 and that would not cover the entire cost of the service the Hernaez family indicated they wished to have. Mr. Stoute stated he explained that the $750 face value of the policy would be deducted from the final bill. He denied telling the Her-naez family that the policy was null and void.
 

 Mr. Stoute also stated that Sayra became very upset and began to use foul language, calling them liars. All three Hernaez family members admit to being upset, but deny the use of bad language or any other inappropriate behavior. Mr. | fiStoute admits he asked the family to leave and find another funeral home to provide the necessary services. However, in his affidavit he stated that he had no “desire to inflict emotional distress of any kind.” The Hernaez family say that Mr. Stoute’s behavior caused them great embarrassment, confusion, grief, and heartache. Ultimately the family explained that, because of the misinformation and mistreatment by Mothe employees, the respectful funeral they planned for Mrs. Hernaez at home was reduced to a cremation in Mississippi.
 

 LAW
 

 A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact, and the mover is entitled to judgment as a matter of law.
 
 [2]
 
 The mover bears the burden of proof; however, the mover need only to “point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim....”
 
 [3]
 
 Once the mover has made a
 
 prima facie
 
 showing that the motion shall be granted, the burden shifts to the adverse party to present evidence demonstrating that material factual issues remain.
 
 [4]
 

 A fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute.
 
 [5]
 
 A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate.
 
 [6]
 
 This Court has further explained that
 

 17Additionally, a “fact” is “material” if its existence or nonexistence may be
 
 *458
 
 essential to a party’s cause of action under the applicable theory of recovery. ... Or, put another way, any decision as to the propriety of a grant of the motion must be made with reference to the substantive law applicable to the case. Only in the context of the applicable substantive law can issues of material fact be ascertained....
 
 [7]
 

 The Hernaez family made claims of misrepresentation, negligent and intentional infliction of emotional distress, unfair- trade practices, and mistreatment of the decedent’s remains against Mothe. The transcript of the hearing on the Motion for Summary Judgment shows that the trial court found no material facts at issue regarding the claim of unfair trade practices. As to that claim, the trial judge specifically found that there were no material facts that rise to “what is needed ... extreme and outrageous and all that....” The court also stated “[tjhere’s definitely not negligent infliction of emotional distress. That’s just not there.... ” The trial court did not offer insight into the reason for granting the summary judgment on the claim of mistreatment of the decedent’s remains.
 

 In applying the substantive law of unfair trade practices and misrepresentation to the facts presented by both parties, we find no material issues of fact still at issue. The Louisiana Unfair Trade Practices Act (“LUTPA”) is embodied in La. R.S. 51:1405 et. seq. LUTPA makes “unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce” unlawful.
 
 [8]
 
 A practice is “unfair” when it offends established public policy and when the practice is unethical, oppressive, unscrupulous or substantially injurious.
 
 [9]
 
 As this Court has explained:
 

 Acts which constitute unfair or deceptive practices are not specifically defined in the statute and are determined by the |¡¡courts on a case-by-case basis.... In order to recover damages for a claim made under this act, a plaintiff must prove that the conduct offends public policy, is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.... For conduct to be unfair it must offend established public policy.... Fraud, deceit and misrepresentation constitute deceptive practices ....
 
 [10]
 

 Thus, misrepresentation constitutes deceptive practices. To recover on a claim of negligent misrepresentation a claimant must show, 1) a legal duty on the part of the defendant to supply correct information to the plaintiff; 2) a breach of this duty; and 3) damages to plaintiff as a result of his justifiable reliance upon the misrepresentations.
 
 [11]
 

 It is undisputed that the parties discussed the burial policy at the meeting on October 2, 2005, and that the terms of the policy were discussed. Mothe argues that there was no misrepresentation be
 
 *459
 
 cause the policy was limited to the $750 face amount, which Mr. Stoute agreed to apply to the cost of the funeral. The only controversy is whether the Hernaez family was told the insurance would not apply. We note that the Hernaez family was paid by the insurance company and has released the company as a defendant. Given the elements for stating a cause of action for misrepresentation, we do not find this issue to be an undecided material fact that would preclude the rendering of a summary judgment.
 

 Further, while there are conflicting statements of fact regarding the permission for the embalming, we do not find any of the facts to be genuine triable issues. Mothe asserts that permission was given by Sayra on the night of her mother’s death. Sayra denies that fact. We do not find this fact to be a genuine issue of triable fact essential for defeating a motion for summary judgment.
 

 The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action.
 
 [12]
 
 The procedure is favored and shall be construed to accomplish these ends.
 
 [13]
 

 Given the facts presented by both parties, the claims made, and the applicable law, we find summary judgment was correctly granted by the trial court. Accordingly, we affirm that judgment.
 

 AFFIRMED.
 

 [1]
 

 .
 
 Fossier v. Jefferson Parish,
 
 07-926 (La.App. 5 Cir. 4/15/08), 985 So.2d 255.
 

 [2]
 

 . La. C.C.P. art. 966.
 

 [3]
 

 . La. C.C.P. art. 966(C)(2).
 

 [4]
 

 .
 
 Perricone v. East Jefferson Gen. Hosp.,
 
 98-343 (La.App. 5 Cir. 10/14/98), 721 So.2d 48.
 

 [5]
 

 .
 
 Hines v. Garrett,
 
 04-0806 (La.6/25/04), 876 So.2d 764, 765 (citing
 
 Smith v. Our Lady of the Lake Hosp., Inc.,
 
 93-2512 (La.7/5/94), 639 So.2d 730, 751).
 

 [6]
 

 .
 
 King v. Ill. Nat'l Ins. Co.,
 
 08-1491 (La.4/3/09), 9 So.3d 780.
 

 [7]
 

 .
 
 Johnson v. Folse,
 
 07-1031 (La.App. 5 Cir. 5/27/08), 986 So.2d 110, 114,
 
 writ denied,
 
 08-1377 (La.9/26/08), 992 So.2d 991 (citations omitted).
 

 [8]
 

 . La. R.S. 51:1405.
 

 [9]
 

 .
 
 Indest-Guidry, Ltd. v. Key Office Equip., Inc.,
 
 08-599 (La.App. 3 Cir. 11/5/08), 997 So.2d 796,
 
 writ denied,
 
 08-2851 (La.2/6/09), 999 So.2d 782.
 

 [10]
 

 .
 
 Dixie Sav. and Loan Ass'n v. Pitre,
 
 99-154 (La.App. 5 Cir. 7/27/99) 751 So.2d 911, 923 (citations omitted).
 

 [11]
 

 .
 
 Commercial Nat'l Bank in Shreveport v. Audubon Meadow,
 
 566 So.2d 1136 (La.App. 2 Cir.1990).
 

 [12]
 

 . La. C.C.P. art. 966(A)(2).
 

 [13]
 

 .
 
 Id.